UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Alliance Well Service, LLC,                                      No. 16-10078-t11

    Debtor.

**MEMORANDUM OPINION**

    Before the Court is J.S. Ward & Son's ("JS Ward's") motion for relief from the automatic stay or alternatively for adequate protection, filed February 24, 2016 (the "Motion"). At a March 3, 2016 hearing the Court ordered the Debtor to begin making adequate protection payments to JS Ward. The sole remaining issue is whether JS Ward should receive "retroactive" adequate protection payments from the petition date. The Court concludes that JS Ward's right to adequate protection of its secured claim began to accrue the date it filed the Motion, rather than the petition date.

    I.    BACKGROUND[1]

    Debtor, which filed this bankruptcy case on January 19, 2016, provides oil drilling services to its customers. Debtor's bankruptcy schedules[2] list expensive oil-field equipment, including oil

---

[1] At the final hearing on March 30, 2016, the parties requested that the Court rule based on the oral and written arguments presented. These findings are limited to the ruling on the Motion. Some background facts come from the Motion. These facts are consistent with findings stipulated to by the parties in a subsequent order, doc. 91.

[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

rigs and derricks, trucks, trailers, a forklift, and an ATV. Debtor is required by its lenders and others to keep its equipment insured and to carry liability insurance.

In August, 2015 Debtor bought a one-year commercial insurance package from Travelers Insurance Company for $134,042. JS Ward was the Debtor's insurance agent in the transaction. Rather than pay the entire premium at once, Debtor signed a premium finance contract with JS Ward, under which JS Ward paid the premium and Debtor agreed to repay JS Ward the financed amount, with interest, over six months. Debtor granted JS Ward a security interest in the unearned insurance premium.

In December, 2015 Debtor bought additional auto and equipment insurance and combined the existing premium financing arrangement with the premium for the new insurance policies. JS Ward was again the insurance agent and the insurance premium financer.[3] The agreement included provisions granting JS Ward a security interest in the unearned premium and the right to cancel the policies and collect the unearned premium in the event of default. The amount owed under the new agreement was $124,672.80.[4]

Debtor's first payment to JS Ward under the new agreement was due January 15, 2016. Debtor did not make did not make the payment, instead filing this case four days later. Debtor also defaulted on the February 15, 2016 payment.

JS Ward filed the Motion on February 24, 2016, asking for stay relief so it could cancel the insurance policies and receive the unearned premium. On March 3, 2016, the Court held a

---

[3] JS Ward sold its rights and obligations under the premium financing agreement to Western Bank of Artesia. However, the sales contract provided that Western Bank had the right to sell the contract back to JS Ward if Debtor defaulted under the contract. When debtor defaulted, Western Bank exercised this right and JS Ward repurchased the premium financing agreement, which it now owns.

[4] This includes $122,480.06 for the insurance premiums, and $2,192.74 in financing charges. The additional insurance was provided by Falls Lake National.

preliminary hearing and ordered that, to avoid stay relief, the Debtor must begin making adequate protection payments to JS Ward of $571.66 per day.

At a final hearing on March 30, 2016, the Court heard oral argument concerning the date JS Ward's right to adequate protection arose. JS Ward argued it was entitled to adequate protection from the petition date. Debtor objected and urged that JS Ward's right to adequate protection did not begin to accrue until the Court held a preliminary hearing on the Motion.

## II.    DISCUSSION

A.    Adequate Protection.

The following sections of 11 U.S.C. § 101 et seq.[5] deal with adequate protection of a secured creditor's lien:

| Section | Language |
|---|---|
|  |  |
| 361 | When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –<br>   (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, [or] use, sale or lease under section 363 of this title… results in a decrease in the value of such entity's interest in such property. |
| 362(d) | On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . . |
| 363(c)(1) | If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may . . . use property of the estate in the ordinary course of business without notice or a hearing. |
| 363(e) | Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. |

---

[5] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code").

-3-

The legislative history of § 361 includes the following commentary:

> [the specified means] of providing adequate protection . . . rely . . . on the value of the protected entity's interest in the property involved. The section does not specify how the value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the court will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess., p. 339 (1977). Although no date is specified, the legislative history makes clear that, once a secured creditor's right to adequate protection arises, its collateral must be valued as of that date and the debtor must compensate the creditor for any subsequent decline.

B.  When Does the Right to Adequate Protection Arise?

The Code does not say when a secured creditor's right to adequate protection begins. Faced with this silence, courts have adopted one of three dates: the petition date; the stay relief/adequate protection motion filing date ("motion date"); and the date a secured creditor could have exercised its state court remedies.

1.  The Petition Date. A line of cases from the 1980s holds that a secured creditor's right to adequate protection begins on the petition date, regardless of when the creditor takes action to obtain adequate protection or stay relief. *See, e.g., Metropolitan Life Ins. v. Monroe Park*, 17 B.R. 934, 939 (D. Del. 1982); *In re Datair Systems Corp.*, 42 B.R. 241, 243 (Bankr. N.D. Ill. 1984); *In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 173 (S.D.N.Y. 1989); *In re Craddock-Terry Shoe Corp.*, 98 B.R. 250, 255-56 (Bankr. W.D. Va. 1988); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 825 (Bankr. S.D.N.Y. 1982); *In re Autotrain Corp.*, 9 B.R. 159, 166 (Bankr. D.D.C. 1981) (citing a 1980 edition of *Collier* for proposition that the value of a secured claim

should be established at case commencement);[6] *In re U.S. Repeating Arms. Co.,* 67 B.R. 990, 999 (Bankr. D. Conn. 1986) (quoting *Autotrain*, including the citation to the early version of *Collier*).

These courts reason that the automatic stay, which arises on the petition date, prevents a secured creditor from realizing on its collateral and thus, for declining-value collateral, causes a "decrease in the value of such entity's interest in such property." *See, e.g.*, *Craddock-Terry Shoe*, 98 B.R. at 255. The courts therefore conclude that the petition date is the proper date to value a secured creditor's collateral. The *Craddock-Terry Shoe* court also was concerned that denying the right to adequate protection until secured creditors take action would result in a "rush to the courthouse" at the outset of a bankruptcy case, when debtors expect a "breathing space." *Id.*

        2.      <u>Motion Date</u>. The majority view and the pronounced trend in the case law is that a creditor's right to adequate protection begins on the motion date. *See, e.g., TranSouth Financial Corp v. Sharon (In re Sharon),* 234 B.R. 676, 684 (6th Cir. BAP 1999); *In re Big3D, Inc.,* 438 B.R. 214, 232-33 (9th Cir. BAP 2010) (in a concurring opinion, Chief Judge Pappas stated "over time, there has been a pronounced shift away from the rule announced in the early cases that emphasized the date of filing the bankruptcy petition as the starting point for payments. Clearly, the bulk of the cases decided since about 1990 favor beginning adequate protection payment at the time relief is requested by the creditor."); *In re Best Prods. Co., Inc.*, 138 B.R. 155, 157 (Bankr. S.D.N.Y. 1992); *In re Roberts*, 63 B.R. 372, 381 (Bankr. E.D. Mich. 1986); *In re 300 Washington Street LLC*, 528 B.R. 534, 552 n. 10 (Bankr. E.D.N.Y. 2015) (citing and following *Best Products*); *In re Continental Airlines, Inc.*, 146 B.R. 536, 539-40 (Bankr. D. Del. 1992)

---

[6] The current *Collier* acknowledges the split in the case law but states "[i]n general, however, because the burden is on the secured party to request protection, a valuation at the time protection is sought will often be most consistent with the Code scheme." 3 Collier on Bankruptcy ¶ 362.07[3][b][vi] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

(same); *In re Waverly Textile Processing, Inc.,* 214 B.R. 476, 479 (Bankr. E.D. Va. 1997); *In re Farmer,* 257 B.R. 556, 561 (Bankr. D. Mont. 2000); *Agency Servs. v. Keck,* 1999 WL 199595, *2 (N.D. Ill.); *In re Walter,* 199 B.R. 390 (Bankr. C.D. Ill. 1996); *In re Cason,* 190 B.R. 917 (Bankr. N.D. Ala. 1995); *In re Barrett,* 149 B.R. 494 (Bankr. N.D. Ohio 1993).

These cases point to the language in §§ 362(d) and 363(e) that place the burden on creditors to take protective action. *See, e.g., Best Products*, 138 B.R. at 158 (citing cases holding that Congress put the burden on secured creditors to obtain adequate protection). They also argue that the secured creditor should face the risk of decline, as it is "best able to anticipate the problem and protect its rights." *See In re Adams*, 2 B.R. 313, 314 (Bankr. M.D. Fla. 1980) (secured creditor should not be allowed to sit back and through inaction compel unsecured creditors to pay for any deficiency that may arise). Finally, some courts adopt a waiver theory, i.e., that while secured creditors may be entitled to adequate protection from the petition date, they waive their right to any protection until they file a stay relief/adequate protection motion. *See In re Vista Marketing Group, Ltd.*, 548 B.R. 502, 522 (Bankr. N.D. Ill. 2016) ("If a secured creditor … fails to… request adequate protection, they risk waiving their right to such protection."); *In re T.A. Brinkoetter & Sons, Inc.,* 2012 WL 1865485 (Bankr. C.D. Ill.) (waiver is implicit in the cases holding that a secured creditor's right to adequate protection does not arise until it files a motion).

       3.    <u>State Law Remedies Date</u>. Finally, a few cases hold that adequate protection payments should not be awarded until the later of the motion date or the date the creditor could have, absent the automatic stay, exercised its state law remedies. The leading case for this proposition is *In re Ahlers*, 794 F.2d 388 (8th Cir. 1986), rev'd on other grounds, 485 U.S. 197 (1988). In *Ahlers* the Eighth Circuit stated:

> Accordingly, in fashioning adequate protection payments, the bankruptcy court must determine the date when the creditor, absent the filing of a bankruptcy

-6-

> petition, could have taken possession of the collateral under state law and could have sold it to a third party, the amount that the creditor would have realized at this sale, and the creditor's expected return upon investment.
>
> . . . .
>
> If . . . . the secured creditor has not commenced foreclosure proceedings prior to the filing of the bankruptcy petition, the start date [for adequate protection payments] should be the date that the creditor moves for adequate protection in the bankruptcy court. To the appropriate date, the bankruptcy court should add the usual foreclosure delays associated with the particular collateral involved.

794 F.2d at 395-96. *See also In re Deico Electronics, Inc.*, 139 B.R. 945, 947 (9th Cir. BAP 1992) (adequate protection analysis requires the court to first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened, and determine the value of the collateral as of that date); *In re Dupell*, 235 B.R. 783, 789 (Bankr. E.D. Pa. 1999); *In re Glinz*, 69 B.R. 916, 920 (Bankr. D.N.D. 1987).

        4.    <u>The Court Adopts the Motion Date</u>. The Court holds that, in most cases, the motion date is the date a secured creditor's right to adequate protection arises. There are good arguments for using the petition date or the state law remedies date, but the Court concludes that the motion date is better for a number of reasons.

First, the motion date is consistent with the language in §§ 362 and 363, which place the burden of action on the secured creditor. *See* 3 Collier on Bankruptcy ¶ 361.02[3] ("The text of the Bankruptcy Code seems to support the view that protection is provided only from the date of the request."); *Id.* at ¶ 362.07[3][b][vi] ("[B]ecause the burden is on the secured party to request protection, a valuation at the time protection is sought will often be most consistent with the Code scheme."); *Best Products*, 138 B.R. at 157 ("Section 363(e) provides that "*on request*" the court "*shall prohibit or condition*" the use, sale or lease of the collateral as is necessary to provide adequate protection. These phrases suggest that a secured creditor is entitled to adequate

protection only upon motion and only prospectively from the time such protection is sought"); *In re Waverly Textile Processing*, *Inc.*, 214 B.R. 476, 479 (Bankr. E.D. Va. 1997) ("[T]he language 'on request' in § 363(e) strongly suggests that a secured creditor is entitled to adequate protection only upon a motion and prospectively from the time protection is sought."); *In re Sharon*, 234 B.R. 676, 684 (6th Cir. BAP 1999) ("Entitlement to adequate protection… with respect to all property of the estate other than cash collateral is triggered by a creditors' request to the bankruptcy court."); *In re Robinson*, 225 B.R. 228, 233 (Bankr. N.D. Okla. 1998).

Second, requiring creditors to request relief serves an important function of giving a debtor notice that they must choose to either keep the property and pay adequate protection, or surrender the property. *In re Best Products*, 138 B.R. at 158.

Third, using the motion date protects the debtor and unsecured creditors. Imposing retroactive adequate protection would interfere with a debtor's right to use non-cash collateral without conditions until a request is made by the secured party. It would be unduly burdensome on the estate if harsh "retroactive" adequate protection payments were required without prior notice. *Id.* at 158; *In re Continental Airlines,* 146 B.R. 536, 540 (Bankr. D. Del. 1992).

Fourth, using the state court remedies date could involve the court in a difficult fact-finding to determine when a creditor could have exercised its state court remedies and realized on its collateral. For example, the Court might have to take evidence on how quickly a particular state court might hear a matter, the average time to complete a foreclosure, and similar facts that are hard to find with accuracy and vary from judge to judge and district to district.

Fifth, using the state court remedies date forces the creditor to risk waiting twice the time it should. For example, if a court were to find that it would take a secured creditor six months from the motion date to realize on its collateral, it would allow a debtor six months before starting

-8-

adequate protection payments. But what if the debtor did not make any payments after the six month delay? The creditor then would have to obtain stay relief and begin to exercise its state law remedies. The result would be a 12-month delay, double what it should be. *See In re Roberts*, 63 B.R 372, 381 (Bankr. E.D. Mich. 1986) (criticizing the state court remedies date for this reason and illustrating the problem with a hypothetical like the one above).

Fixing the beginning of the adequate protection period to the motion date is simple, practical, consistent with the Code, and fair to both sides. The Court therefore holds that, absent unusual circumstances, when ruling on §§361, 362, and/or 363 adequate protection issues the Court will use the motion date as the first date on which a secured party's right to adequate protection may arise.

C. JS Ward is Entitled to Adequate Protection Payments Accruing On February 24, 2016.

There are no unusual circumstances in this case. The Court therefore holds that JS Ward's right to adequate protection began to accrue on February 24, 2016, when it filed the Motion.

III. CONCLUSION

JS Ward is entitled to adequate protection payments of $571.66 per day[7] beginning on February 24, 2016.

A separate order awarding adequate protection will be entered.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

---

[7] The collateral (the unearned insurance premium) apparently is declining in value by $571.66 per day, as set forth in the Court's Order Granting Adequate Protection Payments to J.S. Ward & Son, entered April 14, 2016, doc. 91.

Entered: June 15, 2016

Copies to:

Nancy Cusack
P.O. Box 2068
Santa Fe, NM 87504

William Davis
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109