UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   Alliance Well Service, LLC
         a New Mexico limited liability company
         EIN: 20-2045427,

Debtor.                                          No. 16-10078-t11

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
### AUGUST 11, 2016

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of Title 11 of the United States Code (the "Code") proposes to pay creditors of Alliance Well Service, LLC ("Debtor") from future income to fund the Plan.

Class 8 claims will be paid a pro-rata share from monthly Plan Payments. While the Plan calls for Debtor to make payments to twenty secured classes, as well as unclassified priority and administrative claims, the only payments designated "Plan Payments" are to Class 8, the general unsecured class. Debtor estimates that Class 8 claims will receive approximately 10% of their allowed claims over the Plan Term, which is sixty months.

This Plan provides for twenty (20) classes of secured claims (Classes 1 – 7, separately counting classes 2A – 2J, and 5A – 5E), one (1) class of general unsecured claims (Class 8), one class for the unsecured claim of an insider (Class 9), and one class for the equity interest of Debtor's sole member (Class 10). Payments to the secured creditors in Classes 1 – 7, as well as payments to priority and administrative creditors (including Debtor's attorneys) are not designated as "Plan Payments" herein. Rather, Plan Payments are just those payments that shall go to general unsecured creditors in Class 8. Plan Payments shall be $1,100, and shall begin in the eleventh month after the Initial Distribution Date. (Although the Plan Term is sixty months, the first ten months involve payments to secured, priority, and administrative claimants only. Payments to these creditors are not designated as "Plan Payments.") Thus, if the Initial Distribution Date occurs on November 1, 2016, Plan Payments would begin on September 1, 2017. All payments proposed under this Plan (Plan Payments, payments to secured creditors, and administrative and priority payments) will be made from disposable income, or, at Debtor's sole discretion, from the sale of assets of Debtor. Holders of allowed Class 8 Claims will be paid from monthly Plan Payments. As noted below, certain payments to secured claimants begin on the Initial Distribution Date. This Plan sequesters payments to be made to each class. Thus, an increase or decrease to the amount due to any of the twenty secured classes will not result in a corresponding decrease or increase in the amount of Plan Payments (the amount to be distributed to Class 8, general unsecured claimants). Debtor's sole member will retain his membership interest in the Reorganized Debtor, as provided in the treatment for Class 10, subject to the possibility of conducting an auction of his membership interest in the event that one of the classes rejects the Plan.

The Class 8 Claims, as currently scheduled by Debtor or in a different amount asserted in a filed proof of claim, total $524,559.90. The amount ultimately allowed may vary significantly from this amount. Debtor estimates the percentage distribution to Class 8 to be 10%.

All creditors should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1: The secured claim of Western Bank stemming from six loans issued between March 31, 2009 and March 14, 2014, numbered 64069-73, 64069-78, 64069-80, 64069-84, 64069-86, and 64069-87. By virtue of a cross-collateralization agreement, all six loans are secured by the same collateral, consisting of accounts and other rights to payment, equipment, instruments and chattel paper, and general intangibles. On the Petition Date, Debtor placed the outstanding principal of these six loans at $1,778,548.44. Doc. 64, pp. 21-35. Debtor believes that four of the six loans originally accrued interest at the rate of 7.0% APR, and two of the six originally accrued interest at the rate of 7.5% APR. Western Bank has filed a proof of claim in this matter asserting a total indebtedness, as of the Petition Date, of $1,787,467.46. Claim 16.

Debtor proposes to treat Western Bank's claim as fully secured under this Plan and pay to Western Bank 132 monthly payments of $17,200, or a total of $2,270,400, in full satisfaction of its debt to Western Bank. While this proposal does not specify an interest rate over which a principal sum will accrue, this payment schedule is equivalent to amortizing $1,787,467.46 over eleven years at an annual interest rate of 4.51%. Payments to Western Bank will be due on the fifteenth of each month, beginning in June of 2016.

Debtor proposes to pay Western Bank nothing for the agreement labeled "Insurance Premium Finance Agreement," under which Western Bank gave Alliance a loan to purchase one or more insurance premiums. This loan to Western Bank has been satisfied by Western Bank's recourse to J.S. Ward & Son, Inc. Although this loan was not listed as contingent, unliquidated, or disputed in Debtor's Schedule E/F Part 2, it is specifically excluded from distribution under the Plan because it has been satisfied.

Besides the debt memorialized by the Insurance Premium Finance Agreement, Debtor's Schedule E/F Part 2 lists two other debts to Western Bank. These debts are in fact secured (by virtue of the cross-collateralization agreement) and are among the six loans now superseded by Debtor's proposed treatment of Western Bank in Class 1. Because of this, Western Bank is excluded from Class 8, General unsecured claims.

Western Bank is impaired under the Plan.

2.02    Class 2A: The secured claim of Ally Bank Corp. for $60,882.68, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 1192. The principal amount on this debt accrues interest at 4.99% APR. Ally's proof of claim for this vehicle, Claim 5, shows a pre-petition arrearage of $2,203.38. Debtor proposes to resume regular monthly payments

of $1,041.69 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 4.99% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.03    <u>Class 2B:</u> The secured claim of Ally Bank Corp. for $35,908.04, secured by Debtor's 2013 Ford F-150 with VIN ending in 2460. The principal amount on this debt accrues interest at 6.29% APR. Ally's proof of claim for this vehicle, Claim 6, shows a pre-petition arrearage of $2,078.90. Debtor proposes to resume regular monthly payments of $647.95 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 6.29% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired

2.04    <u>Class 2C:</u> The secured claim of Ally Bank Corp. for $48,054.59, secured by Debtor's 2014 Ford F-250 with VIN ending in 2841. The principal amount on this debt accrues interest at 11.4% APR. Ally's proof of claim for this vehicle, Claim 7, shows a pre-petition arrearage of $3,049.53. Debtor proposes to resume regular monthly payments of $971.51 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 11.4% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.05    <u>Class 2D:</u> The secured claim of Ally Bank Corp. for $37,551.29, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 5038. The principal amount on this debt accrues interest at 7.75% APR. Ally's proof of claim for this vehicle, Claim 8, shows a pre-petition arrearage of $2,236.08. Debtor proposes to resume regular monthly payments of $700.36 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 7.75% APR) that accrued from Debtor's lapse of monthly payments through

July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.06    Class 2E: The secured claim of Ally Bank Corp. for $50,126.99, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 5024. The principal amount on this debt accrues interest at 6.69% APR. Ally's proof of claim for this vehicle, Claim 9, shows a pre-petition arrearage of $2,876.22. Debtor proposes to resume regular monthly payments of $913.74 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 6.69% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.07    Class 2F: The secured claim of Ally Bank Corp. for $43,489.24, secured by Debtor's 2014 Ford F-250 with VIN ending in 3479. The principal amount on this debt accrues interest at either 7.04% APR (as reflected on Ally's Proof of Claim, Claim 10) or 9.24% APR (as reflected on the Motor Vehicle Retail Installment Sales Contract, Claim 10 Part 2). Ally's proof of claim for this vehicle shows a pre-petition arrearage of $2,696.00. Debtor proposes to resume regular monthly payments of $1,153.21 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 7.04% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.08    Class 2G: The secured claim of Ally Bank Corp. for $57,909.89, secured by Debtor's 2015 GMC Yukon with VIN ending in 3209. The principal amount on this debt accrues interest at 5.45% APR. Ally's proof of claim for this vehicle, Claim 11, shows a pre-petition arrearage of $3,086.68. Debtor proposes to resume regular monthly payments of $1,430.84 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 5.45% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-

Debtor's Second Amended                        Page 4 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11      Doc 147      Filed 08/11/16      Entered 08/11/16 20:50:26 Page 4 of 26

collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.09    Class 2H: The secured claim of Ally Bank Corp. for $37,867.86, secured by Debtor's 2014 Ford F-250 with VIN ending in 0575. The principal amount on this debt accrues interest at 9.24% APR. Ally's proof of claim for this vehicle, Claim 12, shows a pre-petition arrearage of $2,586.86. Debtor proposes to resume regular monthly payments of $999.98 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 9.24% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.10    Class 2I: The secured claim of Ally Bank Corp. for $45,006.97, secured by Debtor's 2014 Ford F-350 with VIN ending in 0584. The principal amount on this debt accrues interest at 9.89% APR. Ally's proof of claim for this vehicle, Claim 13, shows a pre-petition arrearage of $3,089.39. Debtor proposes to resume regular monthly payments of $1,252.79 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 9.89% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.11    Class 2J: The secured claim of Ally Bank Corp. for $52,735.35, secured by Debtor's 2013 Ford F-150 with VIN ending in 5906. The principal amount on this debt accrues interest at 8.99% APR. Ally's proof of claim for this vehicle, Claim 14, shows a pre-petition arrearage of $3,184.35. Debtor proposes to resume regular monthly payments of $1,011.45 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 8.99% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount

left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.12   <u>Class 3:</u> The secured claim of Vista Bank stemming from two loans issued on November 4, 2013 and April 24, 2014, and numbered 66721 and 67684, respectively. Alliance pledged the same set of collateral to secure both loans, namely five blow-out preventers with their associated trailers and accessories. The promissory note memorializing the 66721 loan was signed by Alliance as the borrower. The promissory note memorializing the 67684 loan was signed by Alliance's principal Mr. Pennington as the borrower, although the money loaned was used for Alliance's business and operations. On the Petition Date, Debtor placed the outstanding principal of these two loans at $227,098.46. Doc. 64, p. 20. Debtor valued the collateral securing these loans at $75,000.00. *Id.* at p. 20. (While Debtor's Schedule D reflects different collateral for the two loans, upon further review, Debtor now believes that both loans were secured with identical collateral.) Both loans accrued interest at the rate of 6.0% APR. Vista Bank has filed proofs of claim in this matter, corresponding to the two loans, asserting a total indebtedness, as of the Petition Date, of $227,102.81. Claim 18 ($77,036.87) and Claim 19 ($150,065.81).

   Debtor proposes to bifurcate Vista Bank's claims under the Plan and pay to Vista Bank, for the secured portion of Vista Bank's claim, the sum of $75,000, amortized over five years at 6.0% APR, resulting in 60 equal monthly payments of $1,450, or a total of $87,000. The foregoing payments to Vista Bank will be due on the fifteenth of each month, beginning in August of 2016. Any adequate protection payments Debtor has made prior to August of 2016 will be counted against interest only and will not reduce the principal amount owed on the secured portion of Vista Bank's claim.

   Upon conditional approval of this Disclosure Statement, Vista Bank will be given separate notice of Debtor's proposed bifurcation of Debtor's debt to Vista Bank. Debtor proposes to include the unsecured portion of Vista Bank's claim, $152,102.81 ($227,102.81 - $75,000), in the general unsecured class of creditors.

   Vista Bank is impaired under the Plan.

2.13   <u>Class 4:</u> The secured claim of First American Bank for $17,137.65, secured by Debtor's accounts receivable and a 2011 utility trailer with VIN ending in 1062. The outstanding principal on this debt accrues interest at 7.0 % APR. Debtor has been making Adequate Protection Payments of $1,300/month to First American Bank since March of 2016. Debtor proposes to continue its regular monthly payments of $1,300.00 to First American Bank until this debt is paid in full. Because the Cash Collateral Orders do not specify what fraction of the Adequate Protection Payments will be applied to interest and what fraction will be applied to principal, Debtor proposes to the apply the Adequate Protection Payments made to First American Bank as though they had been regular payments made under this debt, first applied to any accrued interest (at 7.0% APR) then to principal. Debtor proposes to not pay any separate payments for post-petition arrearages, but to pay the accrued interest (at 7.0% APR) on the outstanding principal from the Petition Date, adjusted for Debtor's Adequate Protection Payments. This class is impaired under the Plan.

2.14   <u>Class 5A:</u> The secured claim of Ford Motor Credit for $8,226.23, secured by Debtor's 2013 Ford F-150 with VIN ending in 9446. Debtor proposes to resume regular monthly

payments of $1,145.36 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.15    Class 5B: The secured claim of Ford Motor Credit for $11,718.90, secured by Debtor's 2013 Ford F-250 with VIN ending in 1017. Debtor proposes to resume regular monthly payments of $865.37 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.16    Class 5C: The secured claim of Ford Motor Credit for $36,657.93, secured by Debtor's 2013 Ford F-150 with VIN ending in 7410. Debtor proposes to resume regular monthly payments of $1,312.72 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.17    Class 5D: The secured claim of Ford Motor Credit for $10,519.20, secured by Debtor's 2013 Ford F-250 with VIN ending in 3867. Debtor proposes to resume regular monthly payments of $1,053.86 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and

rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.18   Class 5E: The secured claim of Ford Motor Credit for $30,237.27, secured by Debtor's 2014 Ford F-250 with VIN ending in 5367. Debtor proposes to resume regular monthly payments of $1,463.00 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. Nothing in this treatment shall preclude or prevent Debtor from trading in the vehicle identified and rolling the amount left due in this class (after application of the vehicle's value) into a new note used to finance a new vehicle. This class is impaired.

2.19   Class 6: The secured claim of Wells Fargo for $33,589.19, secured by Debtor's 2013 GMC Sierra. On the Petition Date, Debtor valued this vehicle at $15,938.00. Doc. 64, p. 20. Wells Fargo Bank has not filed a proof of claim in this matter.
Debtor proposes to bifurcate its obligation to Wells Fargo under the Plan and pay to Wells Fargo, for the secured portion of Wells Fargo's claim, the sum of $15,938, amortized over five years at 4.0% APR, resulting in 60 equal monthly payments of $293.52, or a total of $17,611.20. Upon conditional approval of this Disclosure Statement, Wells Fargo will be given separate notice of Debtor's proposed bifurcation of Debtor's debt to Wells Fargo. The foregoing payments to Wells Fargo will be due on the fifteenth of each month, beginning in the month of the Effective Date.
Debtor proposes to include the unsecured portion of Wells Fargo's claim, $17,651.19 ($33,589.19 - $15,938.00), in the general unsecured class of creditors.
This class is impaired.

2.20   Class 7: The secured claim of J.S. Ward & Son, Inc. ("J.S. Ward"), filed in the amount of $123,129.76, of which J.S. Ward claims that $113,188.68 is secured. Pursuant to the Order Granting Adequate Protection Payments to J.S. Ward & Son (the "J.S. Ward Adequate Protection Order"), the unearned insurance premiums decrease at the rate of $561.66 per day. Doc. 91, ¶ 7. Since March 3, 2016, Debtor has paid to J.S. Ward semi-monthly payments equal to the daily rate of $561.66, in order to adequately protect J.S. Ward from the loss of value of its collateral. Debtor proposes to continue these adequate protection payments to J.S. Ward under the Plan until the secured portion of J.S. Ward's claim is paid in full, which is calculated, under the J.S. Ward Adequate Protection Order, to coincide with the expiration of the insurance policies that secure the claim. After the secured portion of J.S. Ward's claim has been paid in full, or if J.S. Ward terminates the insurance policies pursuant to the default provisions of the J.S. Ward Adequate Protection Order, then J.S. Ward shall be required to file and serve a Notice of Outstanding Balance Due on its claim within thirty days. If J.S. Ward does not file and serve such Notice within thirty days of the expiration of the insurance policies, no fraction of its claim will be classified as a general unsecured claim and J.S. Ward will have no further distribution on its claim.

Debtor's Second Amended                    Page 8 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 8 of 26

2.21   Class 8 consists of all allowed unsecured nonpriority claims to non-insiders. Class 8 claimants shall be paid *pro rata,* from 50 Plan Payments of $1,100, which shall begin on the eleventh month of payment after the Initial Distribution Date.

2.22   Class 9 consists of the unsecured claim of Rachel Marzak, who is classified as an insider for organizational purposes of the Plan. Ms. Marzak will receive no distribution for her Class 9 claim.

2.23   Class 10 consists of the equity interest in Debtor of Tony Pennington. Class 10 will retain its membership interest in Debtor unless a Class entitled to vote in Classes 1 – 9 objects to the Plan, in which case Mr. Pennington' equity interest shall be auctioned as outlined in § 4.02, below.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01   Unclassified Claims. Under § 1123(a)(1) of the Code, administrative expense claims and priority tax claims are not in classes.

3.02   Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code ("Administrative Expense Claim") will be paid in full, in cash, on the later of the Effective Date of this Plan (as defined in Article VII) or the date that the claim is allowed, or upon such other terms as may be agreed upon by the holder of the claim and Debtor. As with all payments to secured creditors, professional fees shall not be designated Plan Payments. Pre-confirmation professional fees shall be subject to approval under 11 U.S.C. § 330, but post-confirmation professional fees incurred by the Reorganized Debtor shall not. Pre-confirmation Attorneys' fees shall accrue interest at the rate of 1% per month from the Effective Date, and Debtor shall pay pre-confirmation attorneys' fees in monthly payments of $5,000 beginning on or before the Effective Date. All allowed fee applications shall be paid in the amount determined by an order of the Bankruptcy Court approving such fee applications, or as may otherwise be agreed upon in writing between Debtor and each such Claimant, or as provided herein. Debtor estimates that pre- and post-confirmation attorneys' fees will total $70,000 (of which Debtor has already paid approximately $30,000), and the remainder of these fees shall be paid outside of Plan Payments.

3.03   Priority Tax Claims. The Plan treats the secured claims of the Internal Revenue Service ("IRS"), New Mexico Taxation and Revenue Department ("TRD"), New Mexico Department of Workforce Solutions ("NMDWS"), and the Texas Comptroller of Public Accounts ("TCPA"), to the extent not objected to, as a priority claim for purposes of distribution, because the taxing authorities' respective secured claims are entitled to priority treatment under §§ 507(a)(8) and 1129(a)(9)(D) of the Bankruptcy Code.

In tabular form, Debtor's proposed treatment of Priority Tax Claims is as follows:

Debtor's Second Amended                    Page 9 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 9 of 26

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment/ Origination | Treatment |
|---|---|---|---|
| New Mexico Taxation and Revenue Department ("TRD") | As of June 20, 2016, Debtor estimates a total liability to TRD of $221,723.89. TRD claims $279,740.33 is owed, of which $275,656.57 is either secured or entitled to priority. | Assessed 2013-2015 | The allowed priority and secured tax claim of TRD shall be paid in full in equal monthly installments within 60 months of the Petition Date, as required by Bankruptcy Code § 1129(A)(9)(c)(ii). While Debtor plans on objecting to TRD's claim, if such objection is not resolved by the Initial Distribution Date, Debtor will pay to TRD a payment sufficient to amortize $275,656.57, minus the Adequate Protection Payments paid to TRD thus far since the Petition Date, over the remaining sixty months since the Petition Date, accruing interest at 4% APR from the Effective Date. By way of example, if the Effective Date occurs in August of 2015 and the Initial Distribution Date occurs in September of 2016, and if TRD's claim is reduced by only $21,000 (the $3,500 Adequate Protection Payment for March through August) by the Initial Distribution Date, then Debtor will commence to make monthly payments to TRD of $5,249.74 on the Initial Distribution Date, and continue to make monthly payments of such amount unless and until TRD's claim is modified or adjusted. |
| Internal Revenue Service ("IRS") | The IRS claims that Debtor owes $570,897.31, of which $549,127.51 is either secured or entitled to priority. Debtor is in the process of evaluating this claim. | Assessed 2014-2015 | The allowed priority and secured tax claim of the IRS shall be paid in full in equal monthly installments within 60 months of the Petition Date, as required by Bankruptcy Code § 1129(A)(9)(c)(ii). While Debtor may object to the IRS's claim, if such objection is not resolved by the Initial Distribution Date, Debtor will pay to the IRS a payment sufficient to amortize $549,127.51, minus the Adequate Protection Payments paid to the IRS thus far since the Petition Date, over the remaining sixty months since the Petition Date, accruing interest at 3% APR from the Effective Date. By way of example, if the Effective Date occurs in August of 2015 and the Initial Distribution Date occurs in September of 2016, and if the IRS's claim |

| | | | is decreased by only $42,000 (the $7,000 Adequate Protection Payment for March through August) by the Initial Distribution Date, then Debtor will commence to make monthly payments to the IRS of $10,228.29 on the Initial Distribution Date, and continue to make monthly payments of such amount unless and until TRD's claim is modified or adjusted. |
|---|---|---|---|
| Texas Comptroller of Public Accounts ("TCPA") | TCPA's two proofs of claim allege a total indebtedness of $15,847.42, of which $13,802.23 is claimed to be entitled to priority status. | Assessed 2014-2015 | The priority portion of TCPA's two claims shall be paid in full in equal monthly installments within 60 months of the Petition Date, as required by Bankruptcy Code § 1129(A)(9)(c)(ii), at 3% APR from the Effective Date. By way of example, if the Effective Date occurs in August of 2015 and the Initial Distribution Date occurs in September of 2016, then Debtor will make monthly payments to TCPA of $278.38 on the Initial Distribution Date, and continue to make such monthly payments for 52 additional months, with the last payment due on the first business day after January 1, 2021. |
| New Mexico Department of Workforce Solutions ("NMDWS") | NMDWS asserts a total claim of $7,697.12, all of which is either secured or priority. | Assessed 2013-2015 | NMDWS's claim, less the sum of all Adequate Protection Payments made to NMDWS, shall be paid in full in equal monthly installments within 60 months of the Petition Date, as required by Bankruptcy Code § 1129(A)(9)(c)(ii), at 3% APR from the Effective Date. By way of example, if the Effective Date occurs in August of 2015 and the Initial Distribution Date occurs in September of 2016, and if Debtor's Adequate Protection Payments to NMDWS prior to the Initial Distribution Date total $3,000, then Debtor will pay the remaining $4,697.12 in 53 monthly payments, beginning on the Initial Distribution Date, of $94.74, with the last payment due on the first business day after January 1, 2021. |

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

Debtor's Second Amended                    Page 11 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 11 of 26

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1: The secured claim of Western Bank stemming from six loans issued between March 31, 2009 and March 14, 2014, numbered 64069-73, 64069-78, 64069-80, 64069-84, 64069-86, and 64069-87. These loans are cross-collateralized, and fully secured by Debtor's cash, accounts receivable, and Debtor's rigs. | Impaired | Debtor proposes to treat Western Bank's claim as fully secured under the Plan and pay to Western Bank 132 monthly payments of $17,200, or a total of $2,270,400, in full satisfaction of its debt to Western Bank. (While this proposal does not specify an interest rate over which a principal sum will accrue, this payment schedule is equivalent to amortizing $1,787,467.46 over eleven years at an annual interest rate of 4.51%.) Payments to Western Bank will be due on the fifteenth of each month, beginning in June of 2016. |
| Class 2A: The secured claim of Ally Bank Corp. for $60,882.68, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 1192. | Impaired | Debtor proposes to resume regular monthly payments of $1,041.69 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 4.99% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2B: The secured claim of Ally Bank Corp. for $35,908.04, secured by Debtor's 2013 Ford F-150 with VIN ending in 2460. | Impaired | Debtor proposes to resume regular monthly payments of $647.95 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 6.29% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |

| | | |
|---|---|---|
| Class 2C: The secured claim of Ally Bank Corp. for $48,054.59, secured by Debtor's 2014 Ford F-250 with VIN ending in 2841. | Impaired | Debtor proposes to resume regular monthly payments of $971.51 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 11.4% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2D: The secured claim of Ally Bank Corp. for $37,551.29, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 5038. | Impaired | Debtor proposes to resume regular monthly payments of $700.36 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 7.75% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2E: The secured claim of Ally Bank Corp. for $50,126.99, secured by Debtor's 2015 Chevrolet Silverado with VIN ending in 5024. | Impaired | Debtor proposes to resume regular monthly payments of $913.74 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 6.69% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2F: The secured claim of Ally Bank Corp. for $43,489.24, secured by Debtor's 2014 Ford F-250 with VIN ending in 3479. | Impaired | Debtor proposes to resume regular monthly payments of $1,153.21 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 7.04% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to |

| | | terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
|---|---|---|
| Class 2G: The secured claim of Ally Bank Corp. for $57,909.89, secured by Debtor's 2015 GMC Yukon with VIN ending in 3209. | Impaired | Debtor proposes to resume regular monthly payments of $1,430.84 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 5.45% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2H: The secured claim of Ally Bank Corp. for $37,867.86, secured by Debtor's 2014 Ford F-250 with VIN ending in 0575. | Impaired | Debtor proposes to resume regular monthly payments of $999.98 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 9.24% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 2I: The secured claim of Ally Bank Corp. for $45,006.97, secured by Debtor's 2014 Ford F-350 with VIN ending in 0584. | Impaired | Debtor proposes to resume regular monthly payments of $1,252.79 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 9.89% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |

| | | |
|---|---|---|
| Class 2J: The secured claim of Ally Bank Corp. for $52,735.35, secured by Debtor's 2013 Ford F-150 with VIN ending in 5906. | Impaired | Debtor proposes to resume regular monthly payments of $1,011.45 beginning July of 2016 until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest (at 8.99% APR) that accrued from Debtor's lapse of monthly payments through July of 2016. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 2 debts owed to Ally, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ally recourse against this vehicle only. |
| Class 3: The secured claim of Vista Bank stemming from two loans issued on November 4, 2013 and April 24, 2014, and numbered 66721 and 67684, respectively, for which Alliance pledged five blow-out preventers with their associated trailers and accessories (worth $75,000 on the Petition Date). | Impaired | Debtor proposes to bifurcate Vista Bank's claims under the Plan and pay to Vista Bank, for the secured portion of Vista Bank's claim, the sum of $75,000, amortized over five years at 6.0% APR, resulting in 60 equal monthly payments of $1,450, or a total of $87,000. The foregoing payments to Vista Bank will be due on the fifteenth of each month, beginning in August of 2016. Any adequate protection payments Debtor has made prior to August of 2016 will be counted against interest only and will not reduce the principal amount owed on the secured portion of Vista Bank's claim. |
| Class 4: The secured claim of First American Bank for $17,137.65, secured by Debtor's accounts receivable and a 2011 utility trailer with VIN ending in 1062. | Impaired | Debtor proposes to continue its regular monthly payments of $1,300.00 to First American Bank until this debt is paid in full. Because the Cash Collateral Orders do not specify what fraction of the Adequate Protection Payments will be applied to interest and what fraction will be applied to principal, Debtor proposes to the apply the Adequate Protection Payments made to First American Bank as though they had been regular payments made under this debt, first applied to any accrued interest (at 7.0% APR) then to principal. Debtor proposes to not pay any separate payments for post-petition arrearages, but to pay the accrued interest (at 7.0% APR) on the outstanding principal from the Petition Date, adjusted for Debtor's Adequate Protection Payments. |
| Class 5A: The secured claim of Ford Motor Credit for $8,226.23, secured by Debtor's 2013 Ford F-150 with VIN ending in 9446. | Impaired | Debtor proposes to resume regular monthly payments of $1,145.36 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized |

| | | with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. |
|---|---|---|
| Class 5B: The secured claim of Ford Motor Credit for $11,718.90, secured by Debtor's 2013 Ford F-250 with VIN ending in 1017. | Impaired | Debtor proposes to resume regular monthly payments of $865.37 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. |
| Class 5C: The secured claim of Ford Motor Credit for $36,657.93, secured by Debtor's 2013 Ford F-150 with VIN ending in 7410. | Impaired | Debtor proposes to resume regular monthly payments of $1,312.72 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. |
| Class 5D: The secured claim of Ford Motor Credit for $10,519.20, secured by Debtor's 2013 Ford F-250 with VIN ending in 3867. | Impaired | Debtor proposes to resume regular monthly payments of $1,053.86 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. |

| | | |
|---|---|---|
| Class 5E: The secured claim of Ford Motor Credit for $30,237.27, secured by Debtor's 2014 Ford F-250 with VIN ending in 5367. | Impaired | Debtor proposes to resume regular monthly payments of $1,463.00 beginning on the Effective Date until this vehicle is paid in full. Debtor proposes to not pay a separate charge for any pre- or post-petition arrearage, but to pay the additional interest at 4.0% APR that accrued from Debtor's lapse of monthly payments through the Effective Date. To the degree that Debtor's debt in this class is cross-collateralized with the other Class 5 debts owed to Ford, Debtor proposes to terminate such cross-collateralization, such that Default (as defined below) of Debtor's obligations under this Class will give Ford recourse against this vehicle only. |
| Class 6: The secured claim of Wells Fargo for $33,589.19, secured by Debtor's 2013 GMC Sierra. | Impaired | Debtor proposes to bifurcate its obligation to Wells Fargo under the Plan and pay to Wells Fargo, for the secured portion of Wells Fargo's claim, the sum of $15,938, amortized over five years at 4.0% APR, resulting in 60 equal monthly payments of $293.52, or a total of $17,611.20. (Debtor proposes to include the unsecured portion of Wells Fargo's claim, $17,651.19 ($33,589.19 - $15,938.00), in the general unsecured class of creditors.) |
| Class 7: The secured claim of J.S. Ward & Son, Inc. ("J.S. Ward"), filed in the amount of $123,129.76, of which J.S. Ward claims that $113,188.68 is secured. | Impaired | Pursuant to the Order Granting Adequate Protection Payments to J.S. Ward & Son (the "J.S. Ward Adequate Protection Order"), the unearned insurance premiums decrease at the rate of $561.66 per day. Doc. 91, ¶ 7. Since March 3, 2016, Debtor has paid to J.S. Ward semi-monthly payments equal to the daily rate of $561.66, in order to adequately protect J.S. Ward from the loss of value of its collateral. Debtor proposes to continue these adequate protection payments to J.S. Ward under the Plan until the secured portion of J.S. Ward's claim is paid in full, which is calculated, under the J.S. Ward Adequate Protection Order, to coincide with the expiration of the insurance policies that secure the claim. After the secured portion of J.S. Ward's claim has been paid in full, or if J.S. Ward terminates the insurance policies pursuant to the default provisions of the J.S. Ward Adequate Protection Order, then J.S. Ward shall be required to file and serve a Notice of Outstanding Balance Due on its claim within thirty days. If J.S. Ward does not file and serve such Notice within thirty days of the expiration of the insurance policies, no fraction of its claim will be classified as a general unsecured claim and J.S. Ward will have no further distribution on its claim. |

| | | |
|---|---|---|
| Class 8: All non-priority unsecured claims of noninsiders allowed under § 502 of the Code. Debtor currently estimates these claims at $524,559.90. | Impaired | Noninsider holders of allowed non-priority claims shall be paid *pro rata,* from 50 Plan Payments of $1,100, which shall begin on the eleventh month of payment after the Initial Distribution Date. (Although this is a 60-month Plan, the first ten months involve payments to secured, priority, and administrative claimants only.) |
| Class 9: The insider unsecured claim of Rachel Marzak for $90,000. | Impaired | Ms. Marzak will receive nothing for her claim. |
| Class 10: The Equity interest of Tony Pennington (100% membership interest holder) | Unimp-aired (Unless a senior Class Objects to Plan) | Mr. Pennington shall retain his membership interest in Debtor, unless a Class entitled to vote objects to the Plan, in which case Mr. Pennington' equity interest shall be auctioned as set forth immediately below. |

4.02   Cramdown:  If any impaired class votes to reject this Plan, Debtor reserves the right to request that the Bankruptcy Court confirm the Plan under the "cramdown" provisions of 11 U.S.C. § 1129(b). Among the conditions for a cramdown is the requirement that the plan be "fair and equitable" with respect to each class of impaired unsecured claims that has not accepted it. 11 U.S.C. § 1129(b)(1). A plan may be found to be fair and equitable with respect to a class of unsecured claims if "the holder of any claim . . . junior to the claims of such class will not receive or retain under the plan on account of such junior claim . . . any property." 11 U.S.C. § 1129(b)(2)(B)(ii).

In the event that Debtor requests cramdown with regard to a Class which does not vote for and accept the Plan or which files a timely objection to Plan confirmation, and if such class is senior to the Class of Debtor's equity interest, then, because of the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii), the shareholder interest of Tony Pennington will be put up for auction, as follows:

1.   The asset to be auctioned is the membership interest in the Reorganized Debtor.
2.   Membership interest will be sold in its entirety; partial purchases of the membership interest in Debtor shall not be allowed.
3.   The auction shall take place in Albuquerque, New Mexico at a location designated by the Court at a date and time designated by the Court, to be noticed to creditors and other parties of interest at least fourteen (14) days prior to the date of the auction.
4.   Parties wishing to participate in the auction must submit an "Expression of Interest" to Debtor declaring a party's desire to bid. The Expression of Interest must be received by Debtor's counsel at least five business days prior to the date of the auction. The Expression of Interest must demonstrate that the bidder has the financial means by which to complete the purchase of the membership interest. This may be accomplished by furnishing to Debtor's counsel documentation showing available funds of at least the purchase price that the bidder will

Debtor's Second Amended                    Page 18 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 18 of 26

bid at the sale, or by providing a cashier's check of $10,000, which shall be fully refunded if the party providing this is not the successful bidder at the auction.

5. No party shall be allowed to bid contingent on the bidder receiving financing, nor may bids be contingent on a bidder receiving approval from its board of directors or a regulatory body.

6. Any party bidding at the auction must identify itself. An individual bidding on behalf of someone else, an organization, corporation, or trust must identify his or her principal.

7. Any bid submitted at the auction must be irrevocable until the closing and final approval by the Court of the sale of assets.

8. Any party bidding at the auction must state that it does not request any transaction or break-up fee, expense reimbursement, or other transaction expenses paid from the purchase price.

9. A back-up bid shall be solicited at the time of the auction in the event that the winning bidder is unable to finalize the sale.

10. If the winning bidder is unable to finalize the sale because of lack of funding, and if such bidder paid $10,000 to be able to participate in the auction, then such bidder shall forfeit such monies to the Reorganized Debtor.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 <u>Disputed Claim.</u> A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 <u>Delay of Distribution on a Disputed Claim.</u> No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. A disputed claim that is not so allowed shall receive no payment under the Plan and shall be discharged in full in accordance with the order confirming the Plan.

5.03 <u>Power to Object to, Litigate, and Settle Disputed Claims.</u> After the Effective Date, Debtor, shall have the sole power and authority (1) to object to Claims and (2) to litigate any Claim or Interest to Final Order, to settle and compromise any Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure, and withdraw any objection to any Claim, other than a Claim deemed allowed pursuant to the Plan or allowed pursuant to a Final Order.

5.04 5.04 <u>Deadlines for Filing Claims.</u>
(a) <u>Bar Dates for Claims and Interests (Other Than Administrative Claims).</u> If a party has not filed a claim by the Bar Date established by Order of the Bankruptcy Court and that party's claim was subject to the Bar Date, the claim is barred unless, and to the extent that, Debtor listed such Claim in its Schedules filed with the Bankruptcy Court pursuant to § 521 of the Bankruptcy Code as being liquidated in amount, not disputed and not contingent. If the party's claim arises from rejection of an executory contract effected by confirmation of the Plan, or if the claim was otherwise not subject to the Bar Date, the claim is barred 30 days after the Debtor serves the party with notice of the deadline to file

proofs of claim and interests. Notice of a creditor-specific deadline to file proofs of claim and interests shall be provided by means of a separate notice to the specific creditor or claimant and filed with the Bankruptcy Court. Any such creditor or claimant who does not file a proof of claim by the noticed deadline will be forever barred from asserting its Claim.

(b)     Deadline for Filing Administrative Claims Other than Fee Applications/Contents of Application. All requests for payment of Administrative Claims (other than fee applications and requests for payment of administrative expenses filed by government units, including the State of New Mexico, Taxation and Revenue Department) must be filed with the Bankruptcy Court within 30 days after the Effective Date. Any holder of such a Claim that does not file a request for payment within such 30-day period shall be forever barred from asserting its Claim. Any application for allowance of an Administrative Claim, other than a fee application, shall include: (i) the complete name and mailing address of the Claimant; (ii) the date the Administrative Claim was incurred; (iii) the amount of the Administrative Claim; (iv) the basis of the Claim; and (v) a copy of the contract, invoices or a summary thereof, or other documentation sufficient to support the Claim. All fee applications must be filed within 60 days of the Effective Date. The administrative claims bar date is limited to claims arising before this Order. That bar date does not apply to potential administrative claims not yet incurred.

5.05    Time to Object to Claims and Interests (Other than Administrative Claims). Unless another date is established by the Bankruptcy Court or the Plan, any person entitled to object to a Claim or Interest must file the objection with the Bankruptcy Court within 60 days after the later of (i) the Effective Date or (ii) the date that a proof of Claim with respect to such Claim is filed or deemed to have been filed with the Bankruptcy Court.

5.06    Allowance of Administrative Claims (Including Fee Requests). No administrative claim, including any fee request, shall be allowed without prior notice to creditors and parties and interest in accordance with the Bankruptcy Code and Bankruptcy Rules. Upon entry of an Order allowing such administrative claim, Debtor shall pay such claim in accordance with the Plan, or as otherwise agreed between the Claimant and Debtor.

5.07    Objections to Administrative Claims (Including Fee Applications). Any objection to an Administrative Claim, including a fee application, shall be filed with the Bankruptcy Court within the notice period specified in the applicable notice or as otherwise ordered by the Court.

5.08    Less Favorable Treatment. Debtor and the holder of an Allowed Claim may agree to payment of such Allowed Claim on a basis less favorable to the holder than provided in this Plan.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)     A number of Debtor's insurance policies, active on the Petition Date, have since expired by their own terms. Debtor proposes to assumes its insurance agreements with

Debtor's Second Amended                    Page 20 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 20 of 26

New Mexico Mutual Casualty Ins. Co., and continue its post-petition insurance agreements with Kinsale Insurance Company, National Liability & Fire, Allied World Specialty Insurance, and Landmark American Insurance Company. Debtor also proposes to continue leasing the shop located at 5773 Seven Rivers Hwy, Artesia, NM 88210 from Debtor's principal, Mr. Pennington. Beginning no later than the Effective Date, Mr. Pennington will begin charging $1,000 in monthly rent for the shop, plus the utilities and maintenance that Debtor has historically paid. Finally, Debtor proposes to continue its cellular phone contracts with Verizon in the ordinary course of Debtor's business.

(b)     Upon the Effective Date of this Plan, Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not assumed under section 6.01(a), above.

(c)     A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) calendar days after the date of mailing to the claimant of notice of entry of the order confirming this Plan. If no such proof of Claim is timely filed, the Claim arising from rejection of the executory contract or unexpired lease shall be disallowed in full.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    <u>Funding the Plan.</u> Debtor will fund the plan from future income of Debtor and, in Debtor's discretion, other property of Debtor.

7.02    <u>The Confirmation Order.</u> The Confirmation Order shall empower and authorize the necessary parties to take or cause to be taken, on or prior to the Effective Date, all actions necessary to enable them to implement the Plan.

7.03    <u>Debtor as Disbursement Agent.</u> Debtor will act as disbursement agent for all payments made under the Plan.

7.04    <u>Payment of Claims.</u> Debtor shall make payment to each Claim holder of record at the mailing address of record in the Bankruptcy Case, or such other address as the holder may provide in writing to Debtor. No distribution shall be made to any claimant on any distribution unless the payable distribution sum exceeds the sum of $10.00 after calculation of the face value of the allowed claim. Debtor may elect, in its sole discretion, to pay Holders of Class 1 – 8 Claims in periodic amounts that are greater than the amounts shown or by lump sum payment in lieu of periodic distributions, or upon such other terms as may be agreed upon between Debtor and the holders of such Claims.

7.05    <u>Payments by Co-Debtor.</u> To the extent that a creditor recovers a portion of its allowed Claim from a co-debtor of Debtor, the amount of the creditor's allowed Claim that is payable under this Plan shall be reduced by the amount that the creditor receives. This provision shall not apply to New Mexico Taxation and Revenue Department ("TRD"), except to the extent that TRD shall not be permitted to cumulatively recover more than the total amount due from Debtor in payment of a debt for which Debtor is liable.

Debtor's Second Amended                Page 21 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11     Doc 147     Filed 08/11/16     Entered 08/11/16 20:50:26 Page 21 of 26

# ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction. In addition to terms defined in this Plan, the definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

      (a) **"Confirmation Date"** means the date the Bankruptcy Court enters a Confirmation Order confirming the Plan.

      (b) **"Confirmation Order"** means the order of the Bankruptcy Court pursuant to §1129 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated under the Plan.

      (c) **"Plan Payment"** means the $1,100 that Debtor will pay monthly, which shall first be applied to any post-petition administrative tax expenses, then to the priority claim of New Mexico Taxation and Revenue Department, and then to Class 8, General Unsecured Creditors.

      (d) **"Effective Date"** means fourteenth calendar day after the date than an order confirming the Plan is entered, subject to the provisions in § 8.02, below.

      (e) **"Initial Distribution Date"** means the first day of the first month that is at least thirty (30) days after the Effective Date.

8.02    Effective Date of Plan. The Effective Date of this Plan is the fourteenth day after the date of the entry of the Confirmation Order, calculated in accordance with Bankruptcy Rules 8002(a) and 9006(a), but if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

8.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. As the context may require, the singular includes the plural, and the plural includes the singular.

8.06    Controlling Effect/Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws

Debtor's Second Amended                      Page 22 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11     Doc 147     Filed 08/11/16     Entered 08/11/16 20:50:26 Page 22 of 26

of the State of New Mexico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01.  <u>Discharge.</u> On the Confirmation Date, subject to occurrence of the Effective Date, the Debtor will be discharged from all debts that arose before the Petition Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B). After the Effective Date of the Plan your pre-confirmation claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

9.02.  <u>Default.</u> Unless otherwise provided by the Court, all obligations to make payments provided for under this Plan, and all instruments in evidence thereof, shall have a grace period of fifteen (15) days after written notice of failure to pay before such failure to pay shall constitute a default thereof. Unless otherwise expressly provided in the Plan, if there is a default in any payment required under this Plan to be made by the Reorganized Debtor, the holder of such claim may (1) give notice to the Reorganized Debtor of its election to accelerate the balance then remaining under this Plan, declaring the same to be immediately due and payable, (2) enforce all collateral rights, and (3) initiate a collection action in any court of competent jurisdiction, subject only to the right of the Reorganized Debtor to "de-accelerate" its obligations and reinstate the payment provisions set out herein by, within thirty (30) days of notice of acceleration, paying to the creditor all amounts then due under the payment schedule as if acceleration had not occurred.

9.03.  <u>Confirmation Injunction.</u> **Except for those creditors or claimants to whom the Reorganized Debtor is affirmatively required to make payments under this Plan, entry of the Confirmation Order will permanently enjoin all persons who have held, hold, or may hold Claims or Interests on and after the Effective Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor or Reorganized Debtor; (b) from the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or Reorganized Debtor or the property of the Debtor, the Estate, or the Reorganized Debtor with respect to any such Claim; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property of the Debtor, the Estate, or the Reorganized Debtor with respect of any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor or the Reorganized Debtor, or against the property of the Debtor, the Estate, or the Reorganized Debtor with respect to any such Claim. This Confirmation Injunction shall survive closure of this bankruptcy.**

## ARTICLE X
## OTHER PROVISIONS

10.01 <u>Property Vests in Reorganized Debtor on Effective Date.</u> Upon the Effective Date, except as otherwise specifically set forth in this Plan, all property of the Estate of the Debtor and each and every claim or cause of action that was asserted or could have been asserted by the Debtor against any party, in the Bankruptcy Case or otherwise, including causes of action for recovery of preferences, fraudulent conveyances, and any other action maintainable under §§ 542 through 553 of the Bankruptcy Code, shall vest in the Reorganized Debtor, free and clear of all Claims and Interests except as specifically provided for in the Plan or the Confirmation Order. Upon the Effective Date the Reorganized Debtor shall be substituted as a party to all pending matters, adversary proceedings, claims, administrative proceedings, and lawsuits involving the Debtor, whether before the Bankruptcy Court or otherwise.

10.02 <u>Property Free and Clear of Liens.</u> All Property of the Estate and Debtor, whether real property, personal property, exempt property, intangible property, or any other property interest of any nature whatsoever, shall be free and clear of all Claims and interests of creditors, Interest holders, and other parties in interest, except as specifically provided for in the Plan or the Confirmation Order.

10.03 <u>Full and Final Satisfaction.</u> The final payments and distributions provided in respect of each Allowed Claim in the Plan shall be in full settlement of each such Allowed Claim to such Claimant.

10.04 <u>Post-Confirmation Professional Fees.</u> The Reorganized Debtor shall be authorized to pay all legal and accounting services incurred post-confirmation without the fee-application requirements of 11 U.S.C. §§ 328-330.

10.05 <u>Litigation of Estate Claims.</u> Pursuant to 11 U.S.C. § 1123(b)(3)(B), Debtor shall retain and enforce, litigate, and liquidate all claims, causes of action, and interests belonging to Debtor or the Estate. Debtor shall have the choice whether to initiate, pursue, or, to conclude such litigation in their sole discretion.

10.06 <u>Reservation of Rights.</u> All claims or causes of action, cross-claims, and counterclaims of Debtor of any kind or nature whatsoever, against third parties arising before the Confirmation Date that have not been disposed of prior to the Confirmation Date shall be preserved for the benefit of Debtor and the Estate, and prosecuted by Debtor as it sees fit.

10.6 <u>Plan not an Admission of Liability.</u> Until the Effective Date, (i) the compromises, settlements, releases, and abandonments set forth in the Plan shall be of no force or effect; (ii) nothing contained in the Plan shall be deemed to be an admission that any Claim that could be asserted by any person is valid in any respect; and (iii) nothing in the Plan or Disclosure Statement may be admitted into evidence or otherwise used in opposition to any action, suit, motion, or other proceeding brought on any such Claim. If the Effective Date does not occur, nothing contained in the Plan shall be deemed to alter, amend, release, waive, or modify any defense, claim, or offsets that Debtor may have to the Claims of any holder under this Plan.

10.07   <u>Operating Reports.</u> The Reorganized Debtor shall not be required to file monthly operating reports, but shall file quarterly operating reports with the United States Trustee's Office, per the applicable reporting requirements.

10.08   <u>Final Decree.</u> Once the provisions of Rule 3022 of the Federal Rules of Bankruptcy Procedure are met, Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case and grant Debtor its discharge.

Debtor's Second Amended                    Page 25 of 26
Plan of Reorganization
August 11, 2016
Case 16-10078-t11    Doc 147    Filed 08/11/16    Entered 08/11/16 20:50:26 Page 25 of 26

Respectfully submitted,

_Tony Pennington_ (signature)

Alliance Well Service, LLC
By: Tony Pennington
Title: Managing Member

Dated: 8/11/2016 _____

WILLIAM F. DAVIS & ASSOC., P.C.

_William F. Davis_ (signature)

William F. Davis, Esq.
Nephi D. Hardman, Esq.
6709 Academy Rd NE, Ste A
Albuquerque NM 87109
Telephone: (505) 243-6129
Fax: (505) 247-3185
*Attorneys for Debtor/Plan Proponent*

F:\Alliance Well Service, LLC\Plan and DS\Plan 08112016.doc